*United States v. Shaw*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 18th day of October, two thousand twenty-three.

Present:

> PIERRE N. LEVAL,
> SUSAN L. CARNEY,
> WILLIAM J. NARDINI,
>     *Circuit Judges*.

---

UNITED STATES OF AMERICA,

    *Appellee*,

v.

ERNEST SHAW, SR.,

    *Defendant-Appellant*.[1]

22-761-cr

---

| | |
|---|---|
| For Appellee: | THOMAS R. SUTCLIFFE, Assistant United States Attorney, *for* Carla B. Freedman, United States Attorney for the Northern District of New York, Syracuse, NY |
| For Defendant-Appellant: | DEVIN MCLAUGHLIN, Langrock Sperry & Wool, LLP, Middlebury, VT |

---

[1] The Clerk of Court is respectfully directed to amend the official case caption as set forth above.

Appeal from a judgment of the United States District Court for the Northern District of New York (Frederick J. Scullin, Jr., *District Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Defendant-Appellant Ernest Shaw, Sr., appeals from an April 7, 2022, judgment of the United States District Court for the Northern District of New York (Frederick J. Scullin, Jr., *District Judge*), following a jury trial in which he was convicted of conspiracy to distribute and to possess with intent to distribute cocaine and cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. The district court sentenced Shaw to 180 months of imprisonment, to be followed by ten years of supervised release. On appeal, Shaw challenges the district court's denial of his motion to suppress evidence obtained from the following: (i) a wiretap order under Title III of the Omnibus Crime Control and Safe Streets Act of 1968 ("Title III"), 18 U.S.C. §§ 2510–2522, (ii) a warrant permitting the attachment of a GPS tracker to Shaw's vehicle, and (iii) a search warrant for Shaw's primary residence. Shaw further challenges the sufficiency of evidence proving the existence of a conspiracy and the drug weight involved in his offense. We assume the parties' familiarity with the case.

**I.     Motion to Suppress**

"In an appeal from a district court's ruling on a motion to suppress, we review legal conclusions de novo and findings of fact for clear error." *United States v. Freeman*, 735 F.3d 92, 95 (2d Cir. 2013).

Shaw argues that the district court erred in finding that the application for the wiretap order adequately demonstrated necessity as required by Title III. "[W]e grant considerable deference to the district court's decision whether to allow a wiretap, ensuring only that the facts set forth in the

application were minimally adequate to support the determination that was made." *United States v. Concepcion*, 579 F.3d 214, 217 (2d Cir. 2009).[2] To comply with the necessity requirement of Title III, the district court must find that "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous" before issuing a wiretap order. 18 U.S.C. § 2518(3)(c). "[G]eneralized and conclusory statements that other investigative procedures would prove unsuccessful" are insufficient to establish necessity. *United States v. Lilla*, 699 F.2d 99, 104 (2d Cir. 1983).

The district court properly concluded that the wiretap application fulfilled the necessity requirement. The affidavit submitted in support of the wiretap order was more than "minimally adequate" and included more than "generalized and conclusory statements"—it described the investigative events leading up to the application and explained in great detail the alternative investigative techniques, providing specific reasons why they were either inadequate or not practicable.

Shaw nevertheless claims that a wiretap was unnecessary because surveillance would have accomplished the goals of the investigation. But the affidavit explained why surveillance was ineffective: the targeted individuals not only seemed wary of surveillance but also used countersurveillance techniques to evade detection by law enforcement. Moreover, the affidavit contained specific instances where surveillance failed and described why surveillance provided limited evidence of the illegal activities being investigated. These facts are sufficient to establish that surveillance was or would be unsuccessful.

---

[2] Unless otherwise indicated, case quotations omit all internal quotation marks, alterations, footnotes, and citations.

Shaw further argues that the district court erred in concluding that the warrants for the GPS tracker and for his primary residence were supported by probable cause. The Fourth Amendment protects "against unreasonable searches and seizures" and provides that warrants must be supported by "probable cause." U.S. Const. amend. IV. "In evaluating probable cause in any given case, a judge must make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before [the judge], . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Raymonda*, 780 F.3d 105, 113 (2d Cir. 2015). We "generally accord[] substantial deference to the finding of an issuing judicial officer that probable cause exists, limiting our inquiry to whether the officer had a substantial basis for his determination." *Id.*

We conclude that the district court correctly determined that the warrant for the GPS tracker was supported by probable cause. The affidavit submitted in support of the warrant provided transcripts of intercepted calls and text messages between Shaw and various individuals and a description of surveillance efforts. In particular, the affidavit described at least two instances in which Shaw communicated with an individual regarding what the affiant believed to be a drug transaction based on his experience as a Drug Enforcement Administration agent, followed by Shaw driving his vehicle to engage in such a transaction. Thus, there was a "substantial basis" that evidence of a crime would be found by tracking the location of Shaw's vehicle.

Shaw claims, however, that the affidavit for the warrant for the GPS tracker does not support probable cause because the intercepted communications did not explicitly mention any drugs and no law enforcement agents observed the alleged drug transactions. This argument is unpersuasive. The affiant concluded that the intercepted communications and the surveillance demonstrated Shaw's involvement in drug trafficking activities based on his experience as an

4

agent. The issuing judicial officer is entitled to credit the expert opinion of an agent, *see United States v. Cruz*, 785 F.2d 399, 405–06 (2d Cir. 1986), where, as here, the affiant provided detailed descriptions of patterns of behavior that he believed to be customary for someone engaging in drug trafficking, *see United States v. Steppello*, 664 F.3d 359, 364 (2d Cir. 2011) ("[S]ome patterns of behavior which may seem innocuous enough to the untrained eye may not appear so innocent to the trained police officer who has witnessed similar scenarios numerous times before. As long as the elements of the pattern are specific and articulable, the powers of observation of an officer with superior training and experience should not be disregarded.").

We similarly conclude that the district court properly determined that the search warrant for Shaw's primary residence was supported by probable cause. The affidavit described instances in which Shaw traveled between his primary residence and other houses—believed to be "stash" locations—after communicating with individuals to arrange drug transactions. On several of those instances, Shaw left or arrived at his primary residence with various bags, which the affiant believed, based on his experience, to be filled with illegal narcotics or proceeds or evidence of drug trafficking operations. Contrary to Shaw's argument that there was no indication that the bags contained anything illegal, the totality of the circumstances described in the affidavit suggests that they did. For example, the affidavit described one occasion where Shaw arranged a drug transaction with a customer over the phone and, shortly thereafter, left his primary residence with a brown paper bag. He then traveled to another house with the brown paper bag and met his customer not ten minutes later. It is reasonable to infer that the brown bag that Shaw left his house with contained illegal narcotics, which he later sold. *See United States v. Singh*, 390 F.3d 168, 182 (2d Cir. 2004) ("A showing of nexus [between the criminal activities alleged and the residence to be searched] does not require direct evidence and may be based on reasonable inference from

5

the facts presented based on common sense and experience."). There was thus a "substantial basis" that evidence of a crime would be found at Shaw's primary residence. Moreover, even were we to conclude that evidence was shy of satisfying the probable cause requirement, we would nonetheless rule that the search was lawfully conducted "'in objectively reasonable reliance on' a warrant issued by a detached and neutral magistrate judge." *United States v. Falso*, 544 F.3d 110, 125 (2d Cir. 2008) (quoting *United States v. Leon*, 468 U.S. 897, 922 (1984)).

## II. Sufficiency of the Evidence

Shaw also challenges the sufficiency of the evidence underlying two aspects of his conviction. We review a challenge to the sufficiency of the evidence *de novo*. *United States v. Laurent*, 33 F.4th 63, 75 (2d Cir. 2022). In reviewing the sufficiency of evidence, "we are required to draw all permissible inferences in favor of the government and resolve all issues of credibility in favor of the jury's verdict." *United States v. Willis*, 14 F.4th 170, 181 (2d Cir. 2021). "[A] federal conviction may be supported by the uncorroborated testimony of even a single accomplice . . . if that testimony is not incredible on its face." *United States v. Baker*, 899 F.3d 123, 129 (2d Cir. 2018). We must uphold the conviction if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

Shaw first argues that there was insufficient evidence to prove that he participated in a drug trafficking conspiracy. "To prove a drug conspiracy, the government must show that the defendant knew the conspiracy existed, intentionally joined it with specific intent to commit the object of the conspiracy, and knew or could reasonably foresee that the conspiracy involved the alleged quantity and type of drugs." *United States v. Dupree*, 870 F.3d 62, 78 (2d Cir. 2017). We have recognized a narrow exception to the general conspiracy rule for drug transactions—the buyer-seller

6

exception—providing that "notwithstanding that a seller and a buyer agree together that they will cooperate to accomplish an illegal transfer of drugs, the objective to transfer the drugs from the seller to the buyer cannot serve as the basis for a charge of conspiracy to transfer drugs." *United States v. Parker*, 554 F.3d 230, 234 (2d Cir. 2009). To determine "whether the circumstances surrounding a buyer-seller relationship establish an agreement to participate in a distribution conspiracy," courts examine facts such as "whether there was prolonged cooperation between the parties, a level of mutual trust, standardized dealings, sales on credit ('fronting'), and the quantity of drugs involved." *United States v. Hawkins*, 547 F.3d 66, 74 (2d Cir. 2008).

Shaw argues that the testimony of his co-defendant, Marco Scott, established only a buyer-seller relationship between the two of them, not a conspiracy to redistribute controlled substances to others. But we need not assess the merit of that claim because the testimony of another of Shaw's co-defendants, Matthew Saffold, is sufficient to prove Shaw's participation in a drug distribution conspiracy. Saffold testified that in response to Shaw's inquiry, he agreed to supply cocaine to Shaw; that he supplied cocaine to Shaw for several years; and that although Shaw paid upfront for small amounts of cocaine in the beginning, Saffold eventually supplied large amounts of cocaine—up to half a kilogram at a time—on credit to Shaw. This testimony proves that, at a minimum, Shaw and Saffold were involved in a drug distribution conspiracy.

Shaw contends that Saffold's testimony "should be rejected as incredible" because Saffold had substantial incentives to lie as a cooperator and did, indeed, lie on the stand. Appellant's Br. at 34. But this argument amounts to nothing more than an attack on Saffold's credibility, and we do not "second-guess a jury's credibility determination on a sufficiency challenge, particularly when, as is the case here, trial counsel already presented these same credibility arguments to the jury," *Baker*, 899 F.3d at 130. On cross-examination, trial counsel persistently questioned Saffold

about his cooperation with law enforcement and during closing arguments, remarked on Saffold's motives for cooperating with law enforcement and identified instances where Saffold's testimony contradicted other evidence.

Shaw further argues there was insufficient evidence to prove that his offense involved five kilograms or more of cocaine. We disagree. Saffold testified that over a two-to-three-year period beginning in approximately 2016, he distributed at least six kilograms of cocaine to Shaw, which is sufficient to prove that Shaw's offense involved five kilograms or more of cocaine. We reject Shaw's argument that we should disregard Saffold's testimony about drug weight because his testimony was generally "incredible" for the same reasons stated above.

\*     \*     \*

For the reasons stated above, we **AFFIRM** the judgment of the district court.

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk